UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
_____

| | |
|---|---|
| ADAM BICKHAM, ) | C/A No.: 4:15-cv-0813-JFA-TER |
| ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Report and Recommendation |
| ) | |
| ROBERT STEVENSON, WARDEN, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

Petitioner, Adam Bickham (Petitioner), filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on February 25, 2015. (Doc. #1). Petitioner is represented by counsel. Respondent filed a motion for summary judgment on July 27, 2015, along with a return and memorandum. (Docs. #19 and #20). Petitioner filed a response on September 14, 2015, and Respondent filed a reply on September 24, 2015. (Docs. #24 and #25).

**PROCEDURAL HISTORY**

Petitioner responded to the motion for summary judgment asserting that the procedural history set forth in the State's return is substantially correct. Therefore, the undersigned will set out the undisputed procedural history, in part, as set forth by the

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02 (B)(2)(c), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

Respondent.

Petitioner is currently incarcerated in Broad River Correctional Institution pursuant to an order of commitment from the Clerk of Court for Lexington County. Petitioner was indicted at the September 2005 term of the Lexington County Grand Jury for Criminal Sexual Conduct (CSC) (Ind. #2005-GS-32-3424) with a minor in the second degree to which Petitioner pleaded guilty on January 9, 2006. Also, Petitioner waived presentment of a second count of CDC with a minor in the second degree (Ind. #2006-GS-32-0009) and pleaded guilty. Further, Petitioner waived presentment and pleaded guilty under North Carolina v. Alford to CSC with a minor in the first degree (Ind. #2006-GS-32-0010) before the Honorable John C. Few, Circuit Court Judge. Petitioner had previously been convicted of Burglary 2nd Degree and Grand Larceny. Judge Few sentenced Petitioner to fifteen (15) years for one of the CSC 2nd charges, a consecutive ten (10) year term for the other CSC 2nd degree, and twenty-two (22) years concurrent for the CSC 1st charge. Petitioner was represented by Lisa McPherson, Esquire.

**DIRECT APPEAL**

Petitioner appealed his guilty plea convictions and sentences to the South Carolina Supreme Court. Petitioner was represented in the appeal by Joseph L. Savitz, Esquire, of the South Carolina Office of Appellate Defense. In his merits brief, Petitioner raised the following issue to the South Carolina Supreme Court:

> Did the plea judge err in denying Appellant's motion to withdraw his Alford plea?

(Brief of Appellant).[2] On January 12, 2009, the South Carolina Supreme Court affirmed Petitioner's guilty plea convictions and sentences in a published Opinion, State v. Bickham, 381 S.C. 143, 672 S.E.2d 105 (2009). The Remittitur was subsequently issued.

## PCR

Petitioner filed an application for post-conviction relief (PCR) on September 25, 2009. Respondent filed its return on December 22, 2009. Petitioner raised claims of ineffective assistance of counsel and involuntary plea. An evidentiary hearing was convened on May 16, 2011, before the Honorable William P. Keesley, Circuit Court Judge. Petitioner was present and represented by Tommy Thomas, Esquire. By order dated September 12, 2011, Judge Keesely denied relief and dismissed Petitioner's PCR application.

## PCR APPEAL

Petitioner filed a notice of appeal from the denial of his PCR application by way of a petition for Writ of Certiorari to the South Carolina Supreme Court. Petitioner was represented in the appeal by Tommy Thomas, Esquire. Petitioner raised the following issues:

> 1. Did the Post-Conviction Relief Judge err in not granting the Appellant relief on the basis that this plea was not freely, voluntarily, knowingly and intelligently given?
>
> 2. Did the Post-Conviction Relief Judge err in not finding that PCR counsel was ineffective in her advice to Appellant that he was subject to life without parole if he did not accept the State's "all or nothing" plea deal?

---

[2] Petitioner never sought to withdraw his pleas to the two (2) counts of CSC with a minor in the 2nd degree.

3

Petition for Writ of Certiorari at 2 (PCR Appeal). The State file a response. The appeal was transferred to the South Carolina Court of Appeals by Order of the South Carolina Supreme Court. On September 25, 2014, the South Carolina Court of Appeals denied the Petition for Writ of Certiorari. The Remittitur was issued on October 13, 2014.

## HABEAS ALLEGATIONS

Petitioner raised the following in his petition, quoted verbatim:

GROUND ONE:    The Petitioner's right to effective assistance of counsel was violated by trial counsel's erroneous advice to accept the plea deal because he could be sentenced to LWOP if he went to trial.

Supporting facts:    The Petitioner's three indictments had two victims. The first-degree CSC indictment involved an unrelated, underage victim. The two second-degree CSC indictments alleged incidents that occurred on different dates from one another. Plea counsel advised the Petitioner that he could be sentenced to LWOP if he was tried separately for each crime. This was incorrect advice based on the prevailing law at the time of the plea. The Petitioner would have proceeded to trial had he known that he could not be sentenced to LWOP for his offenses.

(Petition).

## STANDARD FOR SUMMARY JUDGMENT

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving

party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must

present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case. Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (citing Williams v. Taylor, 529 U.S. 362, 413 (2000)). However, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id. "Thus, to grant [a] habeas

6

petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004). Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## ANALYSIS

### Ground One

In Ground One, Petitioner argues ineffective assistance of counsel asserting counsel erroneously advised him that he could be sentenced to LWOP if he went to trial on each crime separately and lost. Therefore, Petitioner argues that his guilty plea was not knowing and voluntary.

To clarify, Petitioner was charged with two counts of CSC 2nd degree with a minor and one count of CSC 1st degree. Both of the CSC 2nd degree charges involved the same victim, but occurred on separate dates. While Petitioner was out on bond from the first charge of CSC 2nd degree and told not to contact the victim, he impregnated the victim. Plea counsel advised the plea court that she believed Petitioner was guilty of the charges, that Petitioner did not dispute the facts, but that he was "in love," and it was consensual. The charge of CSC 1st degree involved his daughter. Petitioner entered an Alford plea to this charge.[3]

---

[3]Counsel informed the plea court that the prosecutor had threatened to prosecute the Petitioner in back-to-back trials in an effort to give the Petitioner life without parole (LWOP) pursuant to the

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies

---

new sexual abuse legislation in S.C. Code Ann. § 17-25-45. The plea court informed plea counsel that her advice to her client that he faced LWOP was wrong and gave counsel time to explain to Petitioner that he could not receive LWOP. The plea court relied on the law in South Carolina at the time of the plea in 2006 that a criminal defendant could not be prosecuted for life without parole pursuant to the two-strike provisions of §17-25-45 unless the defendant was convicted of the most serious offense, was released from prison, and then committed a second most serious offense citing State v. Gordon, 356 S.C. 143, 588 S.E.2d 105 (2003). (Tr. 58-59). In his response, Petitioner argues that "Gordon was the applicable law in South Carolina throughout the entirety of defense counsel's representation of the Petitioner, as it was not formally overruled until the Supreme Court's 2009 decision in Bryant v. State, 384 S.C. 525, 683 S.E.2d 280 (2009) which interpreted the amendment to §17-25-45(F) effectively overruled Gordon's interpretation of §17-25-45 and that the amendment went into effect on July 1, 2006, so it would not have been applicable at the time of Petitioner's plea. Petitioner argues that counsel could have done some research on the LWOP issue, and she would have discovered the Gordon case. Petitioner argues that it was deficient not to perform the research. (Doc. # 24, at 9). Petitioner asserts in his response that during the plea questioning by the court, the plea judge stated that "you've heard this legal discussion over the last 20 minutes or so that probably you don't understand all of it and that's fine. Really we don't either." (Doc. #20-1 at 71, lines 3-5). Petitioner argues that the plea judge undermined the effectiveness of the colloquy because the plea judge advised Petitioner that not only did the Petitioner not understand what was going on, but that "[r]eally we don't' either." (Doc. #20 at 71). Petitioner argues that "[b]y equivocating on the mandatory life without parole issue, the plea judge conveyed uncertainty to the Petitioner as to what could really happen if he did not go forward with his plea. Second, the prosecutor renewed his contention that he could prosecute the Petitioner in back-to-back trials and obtain a mandatory life without parole sentence on the third conviction after the Petitioner's colloquy with the plea court." (Doc. #24 at 10-11). Therefore, Petitioner argues that he did not have a definitive and correct understanding of the consequences of his plea.

In this case, the trial judge found that Petitioner was not subject to LWOP based on state law at the time of the plea and called a recess instructing counsel to discuss with Petitioner the fact that he did not face LWOP. (Tr. 58-59). A state court's decision on a question of state law is binding in federal court. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Thomas v. Davis, 192 F.3d 445, 449 n. 1 (4th Cir. 1999). Additionally, Petitioner testified during the plea colloquy that he was not pleading guilty out of fear of receiving LWOP.

8

and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). The Court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the

9

>   wide range of professionally competent assistance.  (Emphasis added.)

Id.; Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000)(confirming the Strickland analysis). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal.  Strickland requires that:

>   [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional  errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

   This issue was raised and ruled upon by the PCR court and raised in the PCR appeal. In the order of dismissal, the PCR court stated the following summary of testimony by trial counsel, Ms. McPherson:[4]

>   At the evidentiary hearing, Ms. McPherson testified that she was appointed to represent the Applicant. Ms. McPherson testified that she had a possible defense of common law marriage of the two charges of CSC 2nd and also that the circumstances were factually consensual. She testified she believed the CDC 1st charge concerning the Applicant's daughter was defendable. Ms. McPherson testified that the solicitor made an offer of a guilty plea with a sentence cap at 10-30 years and not seek life without parole. Ms. McPherson testified that the second CSC 2nd case was difficult because the victim was pregnant and the victim would undergo a paternity test, which was going to show the child was Applicant's. Ms. McPherson testified that about a week and half prior to trial she checked to see if the Applicant was divorced and she found the Applicant was not divorced and

---

[4] The undersigned is setting forth the summary of testimony from plea counsel and the prosecutor for background purposes to clarify the issue.

> the common law marriage defense was going to fail. Ms. McPherson testified that she talked with the solicitor about working out a plea deal, but that the solicitor would not allow a plea to the second CSC 2nd case and that the solicitor was going to call the second CSC 2nd case first and then go forward on the CSC 1st case next and test the case based on new legislation. Ms. McPherson testified that the fear of LWOP pushed the Applicant's decision to plead guilty to the two CSC 2nd charges. Ms. McPherson testified she had many conversations with the Applicant over the phone about his case and that the plea negotiations occurred later in her representation of the Applicant. Ms. McPherson testified she discussed with the Applicant the pros and cons of proceeding to trial versus pleading guilty and that they had no defense for the second CSC 2nd case because the DNA test of the baby matched the Applicant. Ms. McPherson testified it was the Applicant's decision to plead guilty and that the Applicant was aware of the consequences of pleading guilty. Ms. McPherson testified that at the plea proceeding she tried to withdraw Applicant's Alford plea to the CSC 1st charge, but that the withdrawal option was to all of the charges or nothing.

(Doc. #20-2 at 5-5).

The PCR court summarized the testimony of the prosecutor, Mr. Wedekind, as follows:

> At the evidentiary hearing Mr. Wedekind testified that he was the solicitor in charge of prosecuting the Applicant's case. Mr. Wedekind testified that early on there was a single CSC 2nd charge and that Applicant was offered 10 years, which the Applicant rejected. Mr. Wedekind testified that when the Applicant was out on bond the Applicant committed the second CSC 2nd offense. Mr. Wedekind testified that at this point the Applicant was appointed new counsel, Ms. McPherson. Mr. Wedekind testified that these prior plea offers had expired by the time Ms. McPherson undertook representation of the Applicant. Mr. Wedekind testified that all of the prior plea offers were communicated to the Applicant's attorney at that time. Mr. Wedekind testified that the common law marriage defense issue was discussed with Ms. McPherson 3 weeks prior to the guilty plea. Mr. Wedekind testified that regarding the

11

> CSC 1st charge, this charge came about because the victim's Aunt said the victim was acting out sexually and the victim told her Aunt, "This is what daddy does." Mr. Wedekind testified that the final offer was a plea on all 3 charges as a package deal, all or nothing. Mr. Wedekind testified that the Judge at the plea proceeding told the Applicant, the Applicant was not eligible for LWOP and that the Judge took the LWOP off the table. Mr. Wedekind testified that during the discussion of withdrawing all of the pleas, Mr. Wedekind said the State would try each case separately.

(Doc. #20-2 at 6-7).

The PCR concluded as follows:

> This Court finds that the Applicant has failed to meet his burden in proving ineffective assistance of counsel such that his guilty plea was not voluntary. The Applicant has not established that his plea counsel performed deficiently or that he was prejudiced in any way by the alleged deficient performance of his plea counsel. At the guilty plea hearing, the Applicant testified that he was satisfied with the services of plea counsel and that plea counsel did everything Applicant asked of her. Ms. McPherson testified at the PCR hearing that she and the Applicant discussed the pros and cons of proceeding to trial versus pleading guilty, and that Applicant understood those discussions. At the guilty plea hearing, the Applicant testified that he was given enough time to decide to plead guilty and that he was not being forced to plead guilty. This Court finds that the Applicant made the decision to plead guilty knowingly and voluntarily. While Applicant and plea counsel maintain that the Applicant pled out of fear of LWOP, the record reveals that the Applicant did not plead guilty out of fear of LWOP. At the guilty plea hearing the Judge asked the Applicant multiple times if Applicant was pleading guilty because of fear of LWOP and Applicant stated under oath that he was not pleading guilty out of fear of LWOP, but because he was, in fact, guilty of the charges. This Court finds and the record reveals that any issues related to possible punishment, including the issues concerning Life Without Parole, were properly covered by the very thorough plea colloquy by the presiding judge. The Applicant chose to take a

> package deal and declined the opportunity to withdraw his pleas. Applicant rejected the initial plea offers and acquired additional charges while out on bond. Applicant's plea counsel was put into a difficult situation, but she did not make the facts that created the situation. This Court finds that Applicant failed to show plea counsel's representation was not objectively reasonable under the circumstances. Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052 (1984). This Court further finds that the Applicant failed to show that there is a reasonable probability that, but for counsel's alleged deficient performance, Applicant would [not] have pled guilty and insisted on going to trial; therefore this Court finds Applicant's Application for post-conviction relief must be denied and dismissed with prejudice.

(Order of Dismissal, doc. #20-2 at 8-9).

During the plea, the following colloquy took place between the plea judge and trial counsel:

> Counsel:       . . .It would have been his intention to have tried the first two cases and then called this case because Mr. Wedekind has from the beginning wanted my client to have life without parole. So in light of the fact that he would call that case- - -
>
> The Court:     Well, let's–let's–let's stop right there. In advising your client as to whether or not he should make the decision to plead guilty to the two charges of criminal sexual conduct with a minor in the second degree, does this idea that he might have faced life without parole–did it ever come into play in advising him about his decision to plead guilty in those two cases?
>
> Counsel:       It did, and I can be more specific.

(Tr. 36).

The colloquy continued as follows:

> The Court:         . . . You advised your client that if he didn't plead guilty

13

|  |  |
|---|---|
|  | to these three charges that he would face life without parole if the solicitor elected to try them in such a fashion that they went successfully one after the other after another. |
| Counsel: | I did, and I tell him that in light of our having no defense which I discovered approximately a week and half ago with the marriage certificate that I believed he would be convicted of those and he should plead to those. |
| Court: | Well, I think your advice was incorrect. I don't believe that it is possible for him to face life without parole on these crimes. |

. . .

| The Court: | Wait a minute. Wait a minute. If you gave your client advice that he faced life without parole and he pled guilty based on that advice, then we're in trouble. |
|---|---|

(Tr. 58-59).

After discussing the issue at length with counsel, the court stated as follows:

> Well, the record will reflect that you think that he did not make his decision to plead guilty to the criminal sexual conduct\second degree charges based on that erroneous legal advice, but I want you to go back and talk to him and let's hear what he has to say about whether or not he relied on that advice when he made the decision to plead guilty. All right. Let me know when you're done.

(Tr. 61).

The judge went on to state as follows:

> . . . So as I understand the way this case and these cases present themselves, there is no way that this defendant can get a mandatory life sentence, and that's important because if he's pleading guilty under the belief that he could get a mandatory life sentence, then it's not a voluntary plea. On the other hand,

14

> if he's pleading guilty because he is guilty and because he wants to plead guilty, then I can accept the plea. Otherwise, I can't accept the plea. So y'all can—that's what I want you to talk about, and I apologize if I was unclear about that before.

After discussion with the prosecutor and plea counsel, the judge asked Petitioner if he was pleading guilty to the crimes because he feared he would face a mandatory life sentence if he did not, and Petitioner responded "No, Sir." Petitioner stated that he was pleading guilty because he was guilty to the two criminal sexual conducts against a minor in the second degree because he was guilty and for no other reason. Therefore, the judge found the decision to plead guilty was knowingly and voluntarily made. As to the criminal sexual conduct of a minor in the first degree with his daughter, the judge asked the Petitioner if he understood that if he accepted the Alford plea, it did not matter if he did not admit guilt, he would sentence him as if he pleaded guilty. Petitioner stated that he understood, and it was not a surprise to him. The judge accepted the plea under Alford stating that it was his "decision as to whether or not I wanted to accept the plea, whether or not I felt that I should accept the plea. It was not in my mind a decision as to whether or not the plea was voluntarily made." (Tr. 86).

The PCR court's rejection of the ineffective assistance of counsel ground for relief was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); Williams, supra. The PCR court found that

15

Petitioner failed to meet the first and second prongs of Strickland. The PCR court's factual determinations regarding credibility are entitled to deference in this action. Additionally, a presumption of correctness attaches to state court factual findings. 28 U.S.C. §2244(e)(1). Evans v. Smith, 220 F.3d 306 (4th Cir. 2000). The state PCR court's findings of fact are not only entitled to the presumption of correctness, 28 U.S.C. § 2254(e)(1), but also are supported by the record. The plea judge informed the Petitioner that he did not face a sentence of LWOP if he did not plead guilty, gave counsel and Petitioner time to discuss his decision to plead guilty based on the erroneous advice that he was facing LWOP, and Petitioner still chose to enter the pleas of guilty. He stated that he was guilty of the two charges of criminal sexual assault with a minor in the second degree and entered an Alford plea as to the charge of criminal sexual conduct with a minor in the first degree. The judge also informed Petitioner that he would not be eligible for parole, he could receive up to a thirty-year sentence, and that he would still sentence him under the Alford plea as if he admitted guilt.[5]  Petitioner chose to enter the pleas with the knowledge that he would not be

---

[5] Counsel for Petitioner asked to not move forward regarding the Alford plea without withdrawing the pleas to the other two charges, but the plea judge refused the request and proceeded to complete the process. The South Carolina Supreme Court found that the plea judge "offered to refuse to accept all three pleas," but would not allow withdrawal of only the Alford plea. It found that counsel decline and the "plea judge did not abuse his discretion in retaining the package deal by refusing to allow withdrawal of only the Alford plea." (Doc. #20-5, p. 4-5). The PCR court found that Petitioner chose to take a package deal and declined the opportunity to withdraw his pleas. (Doc. #20-2, p. 9). Nonetheless, the issue before the court does not address the discretion of the trial judge but is whether or not counsel was ineffective regarding whether Petitioner knew and understood he was not facing LWOP if he did not plead to all three charges. As set forth above, the state court found no violation of Strickland because, at least in part, the trial judge admonished Petitioner that he was not potentially exposed to LWOP, instructed his attorney to explain that to him, and specifically asked if his plea was influenced by fear of the

subject to a mandatory LWOP if he went to trial and was found guilty.

Additionally, a plea of guilty is considered by the court to be a solemn judicial admission that the charges against the defendant are true. The defendant may not later argue that his plea was invalid except in extremely limited circumstances, Blackledge v. Allison, 431 U.S. 63 (1977) (explaining that in a very limited number of cases the court will allow a defendant's challenge to his plea on the basis that the plea was "the product of such factors as misunderstanding, duress, or misrepresentation by others," though the allegations must be concrete and specific). "The accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so." Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975).[6]

Based on the above discussion, it is recommended that the Respondent's motion for summary judgment be granted.

---

exposure to LWOP to which Petitioner responded, "no." Accordingly, the state court's decision was neither "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1),(2).

[6] See also Bemis v. United States, 30 F.3d 220, 222-23 (1st Cir.1994)(observing general rule that a defendant pursuing habeas relief is "ordinarily bound by his or her representations in court" vis-a-vis a plea); United States v. Butt, 731 F.2d 75, 80 (1st Cir.1984)(affirming denial of habeas motion without a hearing, concluding that the movant's allegations that his attorney had mislead him concerning the judge's acceptance of the plea were "unsupported by specific facts and contradicted by the record," the habeas motion being bare of "credible, valid reasons why a departure from [his] earlier contradictory statements is ... justified," citing Crawford v. United States, 519 F.2d 347, 350 (4 th Cir.1975)).

## **CONCLUSION**

As set out above, a review of the record indicates that the petition should be dismissed. Therefore, it is RECOMMENDED that Respondent's motion for summary judgment (Doc. #19) be granted and the petition be dismissed without an evidentiary hearing.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
January 21, 2016                                               United States Magistrate Judge
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice**.